UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No. 1:03-CR-226 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| ISAAC JONES ) | |

**M E M O R A N D U M**

Defendant Isaac Jones has filed a motion to dismiss the Indictment in this case raising a number of speedy trial related arguments (Court File No. 15). The Government has filed a response in opposition (Court File No. 18) and Defendant is at present set to be tried beginning on May 23, 2005. For the following reasons, the Court will **DENY** Defendant's motion.

**I.  RELEVANT FACTS & PROCEDURE**

On March 5, 2001, state and federal law enforcement officers executed a search warrant at Defendant's residence, located at 1916 Sharp Street in Chattanooga, Tennessee. This search resulted in the discovery of a crack pipe, a pill bottle, razor blades and rolling paper, a loaded Arminius .357 caliber pistol, a loaded Lorcin .380 caliber pistol, and a collection of various types of ammunition (specifically, twenty-four 9mm rounds, ten .357 caliber rounds, eighteen 16-gauge shotgun shells, twenty-one .762 caliber rounds, and thirty-seven .40 caliber rounds). Defendant was arrested and informed of his *Miranda* rights, but elected to waive those rights and gave a statement admitting to possession of the guns and revealing the identities of his sources for drugs. Defendant was not charged at this time based upon his agreement to cooperate with the authorities and was released so

that he could assist in efforts to investigate individuals engaged in narcotics trafficking. Defendant met with officers on approximately six or seven different occasions and was given the opportunity to work as a confidential informant. The Government claims Defendant repeatedly promised to help, but declined each time officers presented him with a specific request to make a controlled purchase of narcotics. Ultimately, the officers determined Defendant was not going to cooperate and referred the case to the United States Attorney's Office for federal prosecution.

At the time of the execution of the search warrant, Defendant was released on bond pending revocation of a term of state probation. It appears Defendant's probation was eventually revoked and he was incarcerated on June 16, 2003. On October 28, 2003, a grand jury handed up the instant Indictment charging Defendant with a single count of being a felon in possession of firearms and ammunition on or about March 5, 2001, in violation of 18 U.S.C. § 922(g)(1) (Court File No. 2). A warrant for Defendant's arrest was issued in conjunction with the Indictment. According to the Government, federal agents did not know Defendant's state probation had been revoked and were unable to locate him until the spring of 2004. After discovering Defendant was incarcerated in a state prison, federal authorities filed a detainer with the Tennessee Department of Corrections on June 1, 2004. However, no efforts were made at this time to bring Defendant into federal custody or arraign him on the charge in the Indictment.

On October 21, 2004, Defendant, acting *pro se*, filed a "Motion for Speedy Trial, or in the Alternative, Dismissal" premised upon the Sixth Amendment, the Tennessee Constitution, and Tenn. Code Ann. § 40-13-101 (Court File No. 3). No further activity occurred in this case until January 4, 2005, when the Clerk of Court received a letter from Defendant inquiring about the status of his speedy trial motion (Court File No. 4). On February 28, 2005, the Government filed a petition for

a writ of habeas corpus ad prosequendum (Court File No. 5) and a writ was issued by the magistrate judge that same day (Court File No. 7). Defendant appeared before the magistrate judge on March 8, 2005, and was arraigned on the Indictment (Court File No. 8). Additionally, counsel was appointed to represent Defendant, Defendant entered a plea of not guilty, and Defendant was ordered detained pending trial (Court File Nos. 8, 10, 12, 13). Defendant was originally scheduled to proceed to trial on April 25, 2005, but the Court continued the trial until May 23 so that the instant motion could be filed and briefed (*see* Court File No. 16). On April 11, 2005, counsel for Defendant filed the instant motion to dismiss the Indictment (Court File No. 15).

## II. DISCUSSION

Defendant argues the Indictment should be dismissed (1) because the Government's delay in bringing the Indictment violated Defendant's due process rights under the Fifth Amendment; (2) because the Government's delay in bringing Defendant to trial on the Indictment has resulted in a violation of his Sixth Amendment right to a speedy trial; and/or (3) due to the Government's "unnecessary delay" in both presenting the charge to the grand jury and bringing Defendant to trial pursuant to Federal Rule of Criminal Procedure 48(b). The Court will address each argument in turn.

### A. Fifth Amendment

Although the acceptability of delay in bringing an indictment is generally measured by the applicable statute of limitations, pre-indictment delay is nevertheless subject to the due process mandates of the Fifth Amendment. *United States v. Lovasco*, 431 U.S. 783, 789-90, 97 S. Ct. 2044, 2048-49, 52 L. Ed. 2d 752 (1977). Pre-indictment delay violates the Fifth Amendment where a

3

defendant can demonstrate (1) he has suffered substantial prejudice to his right to a fair trial as a result of the delay, and (2) the Government purposely delayed to gain a tactical advantage over the defendant. *Id.*; *United States v. Rogers*, 188 F.3d 466, 475-76 (6th Cir. 1997). In this case, the Government was on notice of the conduct upon which the instant charge is based as of March 5, 2001, but the Government did not bring charges until October 28, 2003, almost thirty-two months later. Although the Indictment was brought well within the applicable five-year statute of limitations, 18 U.S.C. § 1347, Defendant contends "his right to a fair trial has inescapably been prejudiced" by this delay (Court File No. 15, p. 3). Defendant asserts that during this thirty-two month period "the memories of witnesses and [Defendant] certainly dimmed," but provides no specific allegations as to witnesses or evidence which have become unavailable during the delay or how that evidence would have been exculpatory or otherwise favorable to Defendant. A defendant's claim of prejudice must be based on more than generalized allegations of fading memories or difficult-to-locate witnesses. Moreover, even assuming a defendant can show a particular witness or document has been rendered unavailable during the period of delay, the defendant must also be able to specifically show how the evidence would favor his case and that it could not be obtained through other means. *See Rogers*, 118 F.3d at 474-76 (finding no showing of substantial actual prejudice even though material witness had died because defendant could not demonstrate witness's testimony would have affected outcome of trial); *see also United States v. Marion*, 404 U.S. 307, 325-26, 92 S. Ct. 455, 466, 30 L. Ed. 2d 468 (1971) (noting it is not sufficient to rely on the "possibility of prejudice inherent in any extended delay . . . that memories will dim, witnesses become inaccessible, and evidence be lost"). Defendant has made no allegations or showings with respect to what specific evidence was lost during the pre-indictment delay nor has he made any

4

attempt to demonstrate that evidence would have been exculpatory in nature. Accordingly, Defendant has not met his burden of establishing substantial prejudice resulting from the pre-indictment delay in this case.

Moreover, even assuming the requirement of substantial actual prejudice was satisfied, Defendant has failed to even so much as allege the Government's delay in seeking the Indictment was an intentional or purposeful attempt to gain a tactical advantage as required to satisfy the second prong of the Fifth Amendment test. Defendant has only alleged "[t]here is no valid reason for the delay of charges in this case" (Court File No. 15, p. 4). That the Government had no good reason for its delay or even no reason at all falls short of meeting Defendant's burden of demonstrating the delay was an *intentional* device employed by the Government for the purpose of gaining a tactical advantage. *See United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992). Accordingly, the Court finds no Fifth Amendment violation resulting from the delay in bringing the Indictment in this case.

**B.      Sixth Amendment**

The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. "[A]ny inquiry into a speedy trial claim necessitates a functional analysis of he right in the particular context of the case . . . ." *Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 2188, 33 L. Ed. 2d 101 (1972). In *Barker*, the Supreme Court identified four factors courts should assess in determining whether a defendant has been deprived of his right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant has asserted his rights, and (4) the resulting prejudice to the defendant. *Id.* at 530, 92 S. Ct. at 2192. No one factor is dispositive one way or the other; rather, all of the factors "must be considered together with such other circumstances as may be relevant."

*Id.* at 533, 92 S. Ct. at 2193.

   1.   **Length of Delay**

As to the first factor, courts have generally deemed delays approaching one year to be "presumptively prejudicial" in the sense that they trigger further inquiry. *See Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S. Ct. 2686, 2691 n. 1, 120 L. Ed. 2d 520 (1992); *United States v. Cope*, 312 F.3d 757, 777-78 (6th Cir. 2002); *United States v. Morin*, 308 F. Supp. 2d 835, 840 (M.D. Tenn. 2003). In this case, Defendant was indicted on October 28, 2003, but he was not arraigned until March 8, 2005, and the trial is currently scheduled to begin on May 23, 2005. Thus, the delay between indictment and trial in this case will be at least nineteen months. At various points in its brief the Government appears to seek to reduce the length of the delay to either sixteen months (*i.e.*, the time between the Indictment and Defendant's arraignment thereon) or six months (*i.e.*, the time between Defendant's first assertion of his speedy trial rights and the original trial date) (*see* Court File No. 18, pp. 5, 6). However, the length of delay is bounded by the filing of the Indictment on October 28, 2003, and the currently scheduled trial date of May 23, 2005. Because this delay exceeds one year, the Court deems it presumptively prejudicial and will proceed to consider the remaining *Barker* factors. *See United States v. Thomas*, 167 F.3d 299, 304 (6th Cir. 1999) (treating length of delay as a "threshold" factor and indicating if length of delay is not sufficient to create a presumption of prejudice, courts need not consider remaining factors).

   2.   **Reasons for Delay**

Closely related to the length of the delay are the reasons for that delay. The primary objective of this inquiry is to determine "which party shoulders the balance of the blameworthiness for th[e] delay." *United States v. O'Dell*, 247 F.3d 655, 667 (6th Cir. 2001). Deliberate attempts

6

Case 1:03-cr-00226   Document 20   Filed 05/06/05   Page 6 of 17   PageID #: 6

to delay trial in order to hamper the defense or gain a tactical advantage are weighted heavily against the Government while "more neutral reason[s] such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. Valid reasons for delay such as a missing witness or delays occasioned by the defendant's own conduct weigh against finding a Sixth Amendment violation.

Only one month of the delay in this case can be solely and exclusively attributed to Defendant, that is the delay resulting from the continuance of the trial from its originally scheduled date of April 25, 2005, to May 23, 2005, so as to allow Defendant to file the instant motion. The Government asserts the remaining eighteen months of delay can be collectively attributed to the Government's unawareness of Defendant's state incarceration, Defendant's failure to assert his speedy trial rights earlier, and "[t]he combination of the Holiday season and extremely high volume of cases in the U.S. Attorney's Office" between October 2004 and February 2005 (Court File No. 18, p. 7). Thus, the Government appears to break the delay down into three component parts: (1) the approximately seven-month period between the handing up of the Indictment on October 28, 2003, and the filing of the detainer on June 1, 2004; (2) the approximately five-month period between the filing of the detainer and Defendant's *pro se* speedy trial motion on October 21, 2004; and (3) the four and one-half month period between the speedy trial motion and Defendant's arraignment on March 8, 2005.

The Government seeks to excuse the first period of delay as resulting from its ignorance of Defendant's whereabouts. The Government represents ATF Special Agent Cordell Malone had no reason to believe Defendant was subject to arrest and/or imprisonment and thought he had simply

7

moved to another county. Upon learning of Defendant's incarceration, the Government claims Special Agent Malone acted "immediately" to inform Defendant of the charges and place a detainer upon him. Even taking these representations at face value and assuming the utmost good faith, it is possible to characterize this delay as resulting from negligence on the part of the Government. It seems unreasonable that officers would have obtained and executed a search warrant for Defendant's residence, arrested Defendant, decided not to prosecute him at that moment in time, and engaged in extended efforts to utilize Defendant as a confidential informant without ever having checked to see if Defendant was subject to any pending charges or outstanding warrants. Further, it seems unlikely the United States Attorney's Office would have decided to seek the instant Indictment without first taking a look at Defendant's criminal record. It is possible none of Defendant's probation-related matters were ever available through the National Crime Information Center ("NCIC") index, but the Government has made no such allegation and the Court assumes these matters were pending in Hamilton County rather than some other outlying county with less reliable reporting practices. Thus, it would seem the Government should have known Defendant was facing the possibility of incarceration on one or more alleged probation violations and its failure to inquire promptly as to the status of those matters was at least minimally negligent. This negligence resulted in a delay of approximately seven months, time which should be weighted against the Government.

The approximately five-month period between the filing of the detainer and Defendant's *pro se* speedy trial motion on October 21, 2004, represents a delay attributable at least in part to Defendant. When a federal detainer based on pending criminal charges is lodged against a state prisoner, the Interstate Agreement on Detainers ("IAD") requires the warden of the state correctional

8

facility to notify a defendant of the pending charges and his right to a speedy trial thereon. *See* 18 U.S.C. app. 2, § 2, art. III(c); *see also* 18 U.S.C. § 3161(j). The IAD further permits a defendant to make a written notice and request of a final disposition of the pending charges and provides the trial on those charges must begin within 180 days of the receipt of such a request. 18 U.S.C. app. 2, § 2, art. III(a) & (b). Defendant has not claimed he was not provided with notice in accordance with the IAD, therefore, the Court will assume Defendant became aware of the pending Indictment and his ability to seek disposition of that charge on or about June 1, 2004. Although the Government did nothing during this time to bring Defendant to trial, Defendant had available to him a mechanism by which he could have expedited his trial on the Indictment and neglected to take advantage of that mechanism at least until October 21, 2004. Accordingly, the blame for this period of delay falls equally on both Defendant and the Government.

The remaining period of delay (*i.e.*, the six month period between Defendant's October 21, 2004, speedy trial motion and Defendant's originally scheduled trial date of April 25, 2005) could cut a number of different ways. The time between the issuance of the writ on February 28, 2005, and Defendant's scheduled trial date of April 25, 2005, is entirely reasonable and results from the operation of the Federal Rules of Criminal Procedure and the Court's general trial practices. As such, this limited delay is neutral as between the parties with respect to the Sixth Amendment speedy trial analysis. Subject to debate, however, is the period of delay between the speedy trial motion on October 21, 2004, and the Government's request for a writ on February 28, 2005. This four-month delay could be weighted either against the Government or equally between the parties depending upon how the Court interprets Defendant's *pro se* speedy trial motion. This motion could be treated as a written notice and request of a final disposition under the IAD which commenced the running

9

of the 180-day clock provided thereby, thus Defendant would have done everything within his power to bring his case to trial and the four-month delay until his arraignment could not be attributed to him. The IAD requires prisoners to "cause to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." 18 U.S.C. app. 2, § 2, art. III(a). Defendant's motion was filed with the Court and contains a certificate of service signed by Defendant and representing a copy of the motion was served on the United States Attorney for this district on October 17, 2004 (*see* Court File No. 3, p. 2). Although the motion is phrased in speedy trial terms and never explicitly references the IAD,[1] Defendant does clearly request a trial on the Indictment, claims the charge in the Indictment is "frivolous and without merit," and states a speedy trial is desired so as to prevent the Indictment from "interfering with and delaying his future liberty" and avoid impairing his ability to present a defense (*id.* at ¶¶ 3, 4). This should amount to at least an implied request for disposition of the Indictment. The only potential hurdle to treating the October 21, 2004, motion as an IAD invocation is Defendant's failure to provide the exact location of his incarceration, though he does state he "is already incarcerated due to previous charges with the State of Tennessee at this point" (*id.* at ¶ 2). Because the Court ultimately finds no Sixth Amendment violation, the Court will construe Defendant's October 21, 2004, filing in his favor and treat it as a valid invocation of his rights under the IAD. Accordingly, Defendant bears no fault for the four-month delay from the filing of that motion until the issuance of the writ on February 28, 2005. The Government claims this delay resulted from its heavy case

---

[1] Defendant does, however, cite to Tenn. Code Ann. § 40-13-101, which defines "indictment." It is possible Defendant intended to cite to Tenn. Code Ann. § 40-31-101, the section adopting and restating the IAD, but simply transposed the numbers.

load at that time and the restrictions, pressures, and bustle of the holiday season. These justifications are not overly satisfying, but they do not rise to the sort of deliberate machinations which should be weighted heavily against the Government. This is not to say these factors somehow render any portion of this delay appropriate, but rather that these assertions fall into that category of "more neutral reasons" which are "weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192 (citing negligence and overcrowded courts as examples of such reasons).

Accordingly, interpreting the facts and filings in the record as favorably to Defendant as possible, of the approximate nineteen-month delay between the bringing of the Indictment and the anticipated commencement of Defendant's trial, thirteen months (or 68%) of that delay is weighted slightly against the Government and roughly six months (or 32%) of that delay is attributed either exclusively to Defendant or equally as among Defendant and the Government. The Government's reasons for the delay are not particularly compelling, but nothing in the record evidences (nor has Defendant alleged) a strategic or malicious calculation on the part of the Government. The lack of good cause for a substantial portion of the delay causes this factor to weigh in favor of Defendant and against the Government thus, in light of all the circumstances, the Government is relatively more to blame for the delay in bringing Defendant to trial. *See Wilson v. Mitchell*, 250 F.3d 388, 395 (6th Cir. 2001).

### 3. **Defendant's Assertion of Speedy Trial Rights**

Third, the Court must consider whether, how promptly, and how forcefully Defendant asserted his right to a speedy trial. In this case, Defendant filed a *pro se* motion asserting his right
11

to a speedy trial approximately four and one-half months after learning of the outstanding Indictment. Setting aside IAD-related issues, this is a fairly prompt and forceful assertion of Defendant's speedy trial rights, especially in light of the fact Defendant was incarcerated at the time and not represented by counsel. The Government appears to suggest Defendant should have immediately asserted his speedy trial rights upon receiving notice of the detainer (Court File No. 18, p. 8), but this seems unreasonable since Defendant might well have assumed it would take some period of time to complete the necessary paperwork and arrange the logistics of transferring him to federal custody. This is not a case where a Defendant sat on his rights until the Government got around to doing something; rather, Defendant only delayed until such time as it became apparent to him the Government was not going to do anything anytime soon. Moreover, Defendant took it upon himself to follow up on his request when he received no response and, through counsel, has now filed the instant motion. As such, the Court finds Defendant has promptly, consistently, and forcefully asserted his speedy trial rights and this factor weighs in favor of Defendant's motion.

    **4.**    **Prejudice to Defendant**

As noted previously, Defendant has not made any specific showing of prejudice. Defendant generally alleges he "has been prejudiced by the passage of time and lack of prosecution" (Court File No. 15, p. 7), but has not pointed to any specific evidence which has been lost or made any showing that evidence would have benefitted him. All that Defendant has done is state the generally obvious fact "witnesses disappear and memories fade" as time passes, thus making counsel's investigation "more difficult and time-consuming," and cited to cases indicating delays of a certain

12

length may create a presumption of prejudice (*id.* at 7-8).² In *Doggett*, the Supreme Court stated that "affirmative proof of prejudice is not essential to every speedy trial claim" as excessive delay may presumptively compromise the reliability of a trial "in ways that neither party can prove or, for that matter, identify." 505 U.S. at 655-56, 112 S. Ct. at 2692-93 (holding eight and one-half year delay between indictment and arrest was presumptively prejudicial). "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657, 112 S. Ct. at 2693. Thus, where there is evidence of negligence on the Government's part, but no bad faith, a presumption of prejudice may arise depending upon the length of the delay. *Howard*, 218 F.3d at 564-65.

It is this presumption Defendant seeks to take advantage of, arguing that since the delay exceeds one year it should be presumed Defendant has been prejudiced. In *Doggett*, the Supreme Court noted courts have generally found delays approaching one year to be "presumptively prejudicial," but was careful to point out this presumption does not necessarily equate to a Sixth Amendment violation, but "simply marks the point at which courts deem the delay unreasonable

---

²Defendant also contends he has suffered "more oppressive incarceration due to being charged in the district court" (Court File No. 18, p. 7). Although oppressive pretrial incarceration is one of the three types of potential prejudice identified by the Supreme Court in *Barker* (along with anxiety/concern and impairment to defense), *see* 407 U.S. at 532, 92 S. Ct. at 2192, subsequent case law has focused on impairment to the defense as the most important type of prejudice. *See id.*; *Howard*, 218 F.3d at 564 ("The most important factor under prejudice is possible impairment of the defense."); *United States v. White*, 985 F.2d 271, 276 (6th Cir. 1993) (holding prejudice factor relates to delay causing impairment of the defense, not delay which prevents federal sentence from running concurrently with a previously imposed sentence). In any event, Defendant has failed to specify exactly how the Government's post-indictment delay has increased his period of incarceration.

13

enough to trigger the *Barker* enquiry." 505 U.S. at 652 n. 1, 112 S. Ct. at 2691 n. 1; *see also Thomas*, 167 F.3d at 304 (treating length of delay as a "threshold" factor and indicating if length of delay is not sufficient to create a presumption of prejudice, courts need not consider remaining factors). Thus, a distinction must be made between that amount of delay which is "presumptively prejudicial" in the sense that charges have been pending for a sufficiently unusual period of time to prompt inquiry into the reasons for, reactions to, and effects of that delay and that amount of delay which is "presumptively prejudicial" in the sense that the delay has continued for so long that it can be reasonably assumed the defendant has suffered oppressive pretrial incarceration, excess anxiety and concern, and irreversible impairment to his ability to offer a defense. In this case, the Court has found the Government's negligent inaction resulted in a thirteen-month delay in bringing Defendant to trial. *See United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000) ("only those periods of delay attributable to the government or the court are relevant to [defendant's] constitutional claim"). While this delay does exceed one year, it does so only barely. Further, although Defendant is not necessarily required to demonstrate actual prejudice, it is nonetheless significant that the Defendant's allegations of prejudice in this case are exceedingly vague and generalized. Defendant has not even engaged in any speculation as to specifics. Delays as long as five years have been held not to violate the Sixth Amendment. *See Barker*, 407 U.S. at 533-36, 92 S. Ct. at 2193-95. Accordingly, based on the fact the delay in this case only marginally exceeds the threshold permitting a presumption of prejudice and in light of the complete absence of any suggestion of even speculative particularized trial prejudice, the Court declines to presume prejudice to the defense resulting from the delay in bringing Defendant to trial on the Indictment.

   **5.**     **Balancing of Factors**

Accordingly, the first and second factors weigh moderately in Defendant's favor, the third factor weighs heavily in Defendant's favor, and the fourth factor weighs against Defendant. As noted above, the length of the delay attributable to the Government is only thirteen months. While this sort of delay is certainly not desirable, it is not quite so egregious as to warrant dismissal standing alone. Additionally, in assessing the second factor (*i.e.*, the reasons for the delay), the Court engaged in a fair amount of speculation in concluding the Government was negligent. All of the Court's assumptions inured to Defendant's favor and it is quite possible some of those assumptions might not be borne out by a full examination of the facts and circumstances. Although the Court believes its finding of negligence is appropriate in light of the Government's failure to offer a particularly good reason for its delay, that finding of negligence should nevertheless be tempered by these considerations. There has been no showing or even allegation of actual prejudice to Defendant and the Court has declined to presume such prejudice. Considering all the factors together along with the entirety of the circumstances, the Court finds Defendant has not suffered a violation of his constitutional right to a speedy trial.

**C.     Rule 48(b) & Unnecessary Delay**

Federal Rule of Criminal Procedure 48(b) permits the Court to dismiss an indictment, information, or complaint "if unnecessary delay occurs in: (1) presenting a charge to a grand jury; . . . or (3) bringing a defendant to trial." Rule 48(b) provides a mechanism for dismissal separate and distinct from the protections afforded by the statute of limitations, Fifth Amendment, Sixth Amendment, and Speedy Trial Act. *See United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000); 3A Charles A. Wright, *Federal Practice & Procedure* § 814 (2ed. 1982 & Supp. 2002); Fed. R. Crim. P. 48, Advisory Notes. However, in considering whether to exercise the Court's inherent

15

power to dismiss a charge due to unnecessary delay, it is helpful to consider the same factors employed in analyzing claims under those legal standards. *See United States v. Wimberly*, 250 F. Supp. 2d 738, 747 (E.D. Mich. 2003) (rejecting Rule 48(b) claim based upon four *Barker* factors relevant to Sixth Amendment claims). In any event, dismissals pursuant to Rule 48(b) should be granted only in extreme circumstances, such as where the delay is purposeful or oppressive. *See Morin*, 308 F. Supp. 2d at 847 (citing *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737, 739 (9th Cir. 1989)). Additionally, a district court should only dismiss an indictment under Rule 48(b) "with caution" and "after forewarning the prosecution of the consequences" of its actions. *Morin*, 308 F. Supp. 2d at 847; *see also United States v. Yuan Qing Jiang*, 214 F.3d 1099, 1101 (9th Cir. 2000). "The caution requirement is satisfied where the reason for dismissal is 'prosecutorial misconduct and demonstrable prejudice or substantial [threat] thereof.'" *Morin*, 308 F. Supp. 2d at 847.

Defendant frames his Rule 48(b) argument in the context of the four *Barker* factors discussed previously in connection with Defendant's Sixth Amendment claim (Court File No. 15, pp. 8-9). As articulated above, Defendant has failed to make a showing of significant, actual prejudice resulting from the timing of the Indictment and/or the delay in bringing Defendant to trial thereon. Additionally, the Court has found the delay was, at most, the result of moderate negligence on the Government's part. Further, here is no evidence or allegation of bad faith or any prosecutorial misconduct in this case. Thus, even assuming prejudice occurred or should be presumed and the forewarning requirement was somehow satisfied, the caution requirement has not been met. *See Morin*, 308 F. Supp. 2d at 847. Accordingly, the Court declines to exercise its discretion to dismiss the Indictment under Rule 48(b).

### III. CONCLUSION

For the reasons stated above, the Court will **DENY** Defendant's motion to dismiss the Indictment (Court File No. 15).

An Order shall enter.

                                           **/s/**
                           **CURTIS L. COLLIER**
                  **UNITED STATES DISTRICT JUDGE**