UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:03-CR-226 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| ) | |
| ISAAC JONES, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M**

This matter comes before the Court after several months of effort by all parties to solve a significant problem: How can the Court conduct a trial or take the guilty plea of a defendant who can neither hear proceedings nor communicate with his counsel or the Court? The short answer is that it cannot, and for the reasons below, the Court will **DECLARE** Defendant Isaac Jones **PHYSICALLY INCOMPETENT** to stand trial.

**I.    Procedural History and Factual Background**

The Court finds no need to hold a hearing on Defendant's competency because the record already is replete with more than enough information on this topic for the Court to make a ruling.

Defendant Isaac Jones ("Defendant") entered into a plea agreement with the Government on June 16, 2005 (*see* Court File No. 24). On that same date, the Court had scheduled a rearraignment hearing for Defendant to plead guilty to Count One of the indictment, charging him with violation of 18 U.S.C. § 922(g)(1). Present at the rearraignment hearing were Defendant's former counsel, LaFonda Jones and Sam Robinson and Assistant United States Attorney Chris Poole on behalf of

the Government. At the rearraignment hearing, Ms. Jones notified the Court Defendant had significant hearing problems even with the assistance of hearing aids, although Defendant can read and write and read lips (Court File No. 38, Exh. 4, Transcript of Rearraignment Hearing June 16, 2006 ("Rearr. Tr.") p. 2). Ms. Jones stated Defendant does not know sign language (*id*. at 16). Ms. Jones indicated she had communicated with Defendant primarily by shouting at a very high volume and some writing (*id*. at 2). Defendant, in response to Ms. Jones' written question asking whether he could hear the proceedings, responded orally "No, I couldn't – Not really. But it would be better to write it down where I can understand it" (*id*. at 3).

The Court asked all parties for recommendations on how to proceed with the hearing in a manner that would ensure Defendant could understand everything that occurred (*id*.). Mr. Poole suggested writing questions down and standing in front of Defendant so Defendant could read Mr. Poole's lips (*id*.). Ms. Jones agreed the hearing could proceed by writing down the Court's questions and all parties' responses for Defendant (*id*. at 4). The Court suggested the use of Computer Assisted Real Time reporting (CART), which displays a transcript of proceedings on a computer screen as parties are speaking (*id*. at 4-6). The Court's primary court reporter, Elizabeth Coffey, is one of a select few court reporters in the area who are certified in CART. The parties felt this would be a tremendous aid since Defendant would be able to read everything any party said during the hearing and not miss spontaneous statements that might be omitted from writings (*id*.). Both Ms. Jones and Mr. Poole agreed CART was a satisfactory method of conducting the rearraignment (*id*. at 7).

The Court then positioned Defendant in front of the lectern, in which a computer screen is installed, to read the CART transcript as the proceedings took place (*id*. at 6). The Court proceeded

2

slowly through its rearraignment colloquy, and it appeared to the Court initially Defendant understood the proceedings and was able to follow along, answering simple questions, such as those concerning his age and education, appropriately (*id*. at 8-11). The Court and court reporter both had some difficulty understanding Defendant's response to questions, as his speech is both soft and rapid, making it very difficult to hear and decipher.

The Court then reached the portion of the colloquy in which it asks a defendant whether he has any understandings with the Government that are not included in the plea agreement. Defendant initially answered he had no other understandings, but then became confused by the question and asked for further explanation (*id*. at 11-13). Ms. Jones attempted to explain the question in simpler terms, and Defendant's responses to Ms Jones became unintelligible to Ms. Jones, the Court, and the court reporter (*id*. at 13). Defendant continued to indicate to Ms. Jones he did not understand the question, and was unable to answer it (*id*. at 14-15). Mr. Robinson then attempted to explain the question to Defendant without any more success than Ms. Jones had (*id*. at 15-16). This went on for at least 15 minutes, as Defendant continued to get more confused. Defendant's frustration with his inability to communicate with his attorneys was evident (*id*.). Defendant finally stated, "I really don't understand. I understand a little bit, not too good" (*id*. at 17).

At this point, the Court found the parties had "reached an impasse" and was unwilling to proceed with time-consuming and ultimately unfruitful attempts to explain the questions to Defendant (*id*. at 17). It was obvious to the Court Defendant did not comprehend what was taking place. Mr. Poole made a motion for a continuance so Defendant's attorney could explain the questions to him, however, Ms. Jones indicated she had gone over the plea agreement and rearraignment colloquy with Defendant before the hearing, so she was unsure what more she could

do (*id.* at 18). The Court requested the parties confer and recommend what approach the Court should take with Defendant in future proceedings.

Defendant then filed a motion for a medical exam by the Bureau of Prisons (Court File No. 25) for evaluation and treatment of his hearing disability with appropriate hearing aid devices, which Magistrate Judge William B. Carter granted (Court File No. 26). Defendant was evaluated at FMC Butner, North Carolina, and a letter from A. F. Beeler, Warden, was filed under seal with the Court on January 5, 2006 (Court File No. 32). This letter briefly stated an evaluation by a specialist at North Carolina Eye, Ear, Nose and Throat in Durham, North Carolina "revealed profound bilateral hearing loss secondary to a history of meningitis at age two. He has used amplicifaction since age five. He reads lips and written text" (*id.*). Further, the specialist did not believe further treatment would improve Defendant's hearing, finding although Defendant could be evaluated for a cochlear implant, "considering the duration of his deafness, improvement in his hearing would not be likely" (*id.*).

Although a psychological exam was not requested by the Court, BOP conducted a "psychology consult" and determined Defendant's intellectual functioning is average to low-average on non-verbal tasks, but because of his hearing impairment,

> . . . tasks requiring him to attend to auditory stimuli without the aid of visual prompts and representations, may lead him to feeling frustrated and unwilling to put forth sincere effort. When there is greater emphasis on tasks requiring verbal skills, his overall performance may be closer to a borderline range of intellectual functioning and may result in others viewing him as cognitively impaired.

(*id.*).

Defendant returned to the Eastern District of Tennessee following this evaluation, and filed a lengthy and well-written *pro se* motion for new counsel, also complaining he could not get the

4

correct batteries for his hearing aids and requesting he be returned to FMC Butner, North Carolina for better hearing aids (Court File No. 30). After speaking to Ms. Jones regarding this matter, Magistrate Judge Carter denied Defendant's motion (Court File No. 33).

The Court held a status conference with Ms. Jones and Mr. Poole on January 5, 2006 to discuss its options in proceeding with this matter. The Court indicated it would not conduct another rearraignment hearing until there was some assurance Defendant would be able to understand the proceedings and participate accordingly, and asked the parties for suggestions on how to accomplish that. The best solution that came out of the meeting was for Ms. Jones to go over the rearraignment colloquy in detail with Defendant in advance, answering any questions he might have and ensuring he understood each question, then using CART during the rearraignment hearing and having Defendant write his answers, since all parties had difficulty understanding his speech during the previous proceeding. Ms. Jones invited the Government to participate in this effort. Ms. Jones indicated she would meet with Defendant and attempt a dry-run of the rearraignment colloquy, and report back to the Court.

Ms. Jones met with Defendant shortly thereafter, and notified the Court she attempted to conduct a mock rearraignment hearing without success. Ms. Jones stated she went through the colloquy for more than an hour and was unable to get even halfway through the colloquy. Additionally, Ms. Jones stated it was clear to her Defendant did not understand questions although he indicated he did understand them, because he was answering questions incorrectly. For example, the rearraignment colloquy contains a questions regarding whether the defendant is presently on probation or parole as to any previous offense; Defendant told Ms. Jones he was on probation or parole, which Ms. Jones knew is not in fact the case.

5

After receiving this report, the Court was unwilling to proceed with another fruitless rearraignment proceeding, and found its only solution was to set the case for trial and determine whether Defendant was competent to stand trial. Defendant is set for trial Tuesday, February 21, 2006.

During the final pretrial conference in this matter the issue of Defendant's ability to hear and understand events during the trial was again discussed at length. Because Ms. Jones has relocated out of state, Rita LaLumia has replaced Ms. Jones as Defendant's counsel, in addition to Sam Robinson. Present at the final pretrial conference were Ms. LaLumia and Mr. Robinson for Defendant and Assistant United States Attorney Steve Neff for the Government. Mr. Neff argued Defendant is competent to plead guilty to the indictment, pointing particularly to Defendant's written filings in this case and Defendant's previous guilty pleas entered in numerous state-court proceedings (Court File No. 38, Exh. 5, Transcript of Final Pretrial Conf. ("Final Pretrial Tr.") pp. 6-7). However, Mr. Neff conceded Ms. LaLumia had told him Defendant claims he did not hear the proceedings during those state-court pleas (*id.*). Mr. Neff requested the Court set the case for another rearraignment with CART or perhaps have a magistrate judge take the guilty plea and make a report and recommendation of Defendant's competency (*id.*).

Ms. LaLumia indicated Defendant's situation has improved somewhat with better batteries being supplied for Defendant's hearing aids, but she still had concerns about his being able to comprehend proceedings or communicate with her or the Court (*id.* at 8-10). Ms. LaLumia also raised the issue of using an interpreter for Defendant during a trial, stating Defendant told her he knows "some sign language" (*id.* at 13). Ms. LaLumia had used an interpreter in meetings with Defendant and found it somewhat helpful, although she "would not say that the improvement

6

reaches a level of 100 percent communication . . ." (*id*. at 10-11). Ms. LaLumia indicated she had attempted to go through the rearraignment colloquy with Defendant with the interpreter's assistance, and stated, "considerable time was spent in reviewing the plea colloquy with him, and there were several areas for which the explanation from me had to be made over and over as well as through the interpreter. The interpreter could spell matters, or interpret them in – using maybe an abbreviated language or a different type of a language that is used in American Sign Language . . ." (*id*. at 14). The Court was very skeptical about using an interpreter when Defendant does not actually know sign language well enough to fully understand an interpreter fluent in that language (*id*. at 14-15).

Mr. Robinson then focused on Defendant's literacy by pointing to his written filings and suggested letting him answer questions in writing during a rearraignment hearing (*id*. at 19). The Court noted Defendant was able to write his answers in the previous hearing but that did not assist him in communicating with his counsel when he became confused (id.).

The Court once again requested the attorneys propose a feasible solution that would ensure Defendant understood the proceedings such that he could enter a guilty plea. Neither party was able to propose such a solution (*id*. at 16, 19-20).

Since the final pretrial conference, the Government has filed a Motion for Pretrial Determination of Competency (Court File No. 38) and a supplement thereto (Court File No. 40) and Defendant has filed a Motion to Provide Interpreter and Other Accommodations for Hearing-Impaired Defendant (Court File No. 39).

**II.    Analysis**

A criminal defendant may only be tried if he is competent. *Pate v. Robinson*, 383 U.S. 375, 378, 15 L. Ed. 2d 815 (1966). The standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 4 L. Ed. 2d 824, 80 S. Ct. 788 (1960) (per curiam) (internal quotation marks omitted).

Due process prohibits trying a defendant who lacks this capacity to understand proceedings, consult with counsel, and assist in his defense. *See Drope v. Missouri*, 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975); *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966). Additionally, the Sixth Amendment Confrontation Clause requires "the accused . . . know . . . the nature and cause of the accusation he is called upon to answer, and all necessary means must be provided to this end." *United States v. Quesada Mosquera*, 816 F. Supp. 168 (E.D.N.Y. 1993) (*quoting Terry v. State*, 21 Ala. App. 100, 105 So. 386, 387 (Ala. App. 1925) (reversing conviction of a deaf mute); *citing State v. Vasquez*, 101 Utah 444, 121 P.2d 903, 906 (Utah 1942) (reversing conviction of a Mexican national who was denied an interpreter)). A defendant's right to effective assistance of counsel is impaired when he cannot cooperate in an active manner with his attorney. *Riggins v. Nevada*, 504 U.S. 127, 144, 112 S. Ct. 1810, 1819, 118 L. Ed. 2d 479 (1992). In short, competence encompasses all those rights essential to a fair trial. *See Drope*, 420 U.S. at 171-72.

In light of the unique facts of this case, detailed extensively above, the Court cannot imagine Defendant will be physically able to hear, much less understand, the proceedings taking place, or

8

"consult with his lawyer with a reasonable degree of rational understanding."[1] *Dusky,* 362 U.S. 402.

Defendant requests the assistance of interpreters and other accommodations in order to assist him in hearing and communicating at trial (Court File No. 39). The Court Interpreter's Act provides the Court authority to utilize the services of an interpreter:

> The presiding judicial officer . . . shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, in judicial proceedings instituted by the United States, if the presiding judicial officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings–
> (A) speaks only or primarily a language other than the English language; or
> (B) suffers from a hearing impairment (whether or not suffering also from a speech impairment) so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

28 USCS § 1827(d)(1). This solution would be an effective one if Defendant was fluent in a language, such as sign language, in which others also were fluent. However, Defendant is not fluent in sign language. Defendant apparently knows a little sign language, and uses gestures and other methods of communicating in order to get through life. Unfortunately, no one but Defendant knows this language. Therefore no interpreter, not even the expert proposed by Defendant and the Government in their filings, Professor Marie Griffin of the University of Tennessee at Knoxville,

---

[1] The Court has taken note of the cases the parties have presented, including *Shook v. Mississippi*, 2000 WL 877008 (N.D. Miss. June 8, 2000) (unpublished) and *Stanley v. Lazaroff*, 82 Fed. Appx. 407, 2003 WL 22290187 (6th Cir. 2003). The Court finds the facts of Defendant's hearing impairment and ability to communicate, as experienced by the Court during the rearraignment hearing, differ substantially from the facts relevant to the defendants in those cases. Additionally, the procedural posture of those cases, petitions for habeas corpus under 28 U.S.C. § 2254, relating to state-court convictions, makes the holdings of these cases difficult to apply here.

could be certified by the Court as able to accurately communicate the proceedings to Defendant.

The Court would liken Defendant to a defendant who speaks an obscure language for which no interpreter can be found. How could the Court conduct proceedings against such a defendant while protecting his rights under the United States Constitution? The Court can see no way to do so.

The Court would note Defendant's participation in previous guilty pleas is no proof of his ability to comprehend and communicate during this Court's rearraignment proceedings; Defendant has indicated he could not hear the proceedings during his prior guilty pleas (*see* Final Pretrial Tr. at 6). Additionally, Defendant's ability to read and write well, exhibited by his written filings in this case, cannot solve the problem; the Court at the rearraignment hearing offered Defendant a pad and pen, but he was still unable to communicate effectively with his counsel when he could not understand the Court's question (*see* Rearr. Tr. at 11-17).

The Court has tried every solution it could fathom solve this problem, and received no workable solution from the Government after repeatedly requesting one. The Government in its most recent filing notes Defendant had no trouble communicating with officers upon his arrest; "the defendant read lips, they exchanged handwritten notes, and the defendant used a friend to help interpret as well," with the friend mostly translating Defendant's speech to the officers (Court File No. 40, p. 1). While this method of communication may have been sufficient in a small group setting, this is not a solution for proceedings in open court. Defendant's friend obviously cannot act as an interpreter for Defendant, because of the inherent prejudice in such a scenario. Additionally, unless Defendant quickly jumps around the courtroom to be near each participant as he or she speaks, he cannot be expected to read lips during the proceedings. The Court has noted the failure

10

of the handwritten-note method during the rearraignment hearing.

Because Defendant does not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him," the Court finds he is not physically competent to stand trial. *Dusky,* 362 U.S. 402.

### III. Conclusion

In light of all of the above, the Court will **DECLARE** Defendant Isaac Jones **PHYSICALLY INCOMPETENT** to stand trial.

Where a defendant is incompetent, "due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him." *Medina v. California*, 505 U.S. 437, 448 (U.S. 1992) (*citing Dusky*, 362 U.S. 402). Therefore, as the Court does not anticipate Defendant will at any time regain his ability to hear or speak, considering he has been deaf since the age of two, the Court will take this trial off its trial calendar permanently.

**SO ORDERED.**

**ENTER:**

                                                    **/s/**
                                                  **CURTIS L. COLLIER**
                                                  **CHIEF UNITED STATES DISTRICT JUDGE**