| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:03-CR-226 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| ISAAC JONES, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This case presents a challenging and troubling quandary: How can the Court afford fundamental due process protections, guaranteed to American criminal defendants, to a man with substantial cognitive and communicative deficits whose impairments render him unable to meaningfully participate in his own defense? After extensively reviewing the record, conducting hearings, and viewing Defendant Isaac Jones's ("Defendant") conduct in the courtroom, this Court concludes the extension of such due process protections would be impossible if Defendant proceeded to trial. Defendant's deficits render him incompetent to stand trial and participate meaningfully in his defense. Accordingly, the Court will **ORDER** the matter permanently removed from the Court's trial calendar.

### I.     BACKGROUND

Much of this case's factual background has been covered by the Court's earlier opinion in *United States v. Jones*, 2006 WL 389847 (E.D. Tenn. Feb. 17, 2006); this memorandum will rehash only the most salient points. Defendant entered a plea agreement on the charge of being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At

Defendant's rearraignment hearing, it became clear Defendant had severe hearing problems which prevented his effectively understanding testimony and communicating with his lawyers. *Id.* at *1. Defendant gave unintelligible responses during the plea colloquy, became confused and frustrated, and was ultimately unable to answer. *Id.* After the Court declared it had "reached an impasse," Defendant was evaluated at the Federal Medical Center at the Bureau of Prisons facility in Butner, North Carolina ("FMC Butner"), where it was determined Defendant suffered from profound bilateral hearing loss, as well as average to low-average intellectual functioning. *Id.* at *2. Upon Defendant's return to Tennessee, the Court set the matter for trial and held a final pretrial conference, where neither side was able to "propose a feasible solution that would ensure Defendant understood the proceedings such that he could enter a guilty plea." *Id.* at *4. After reading through the parties' written submissions, the Court found "no need to hold a hearing on Defendant's competency because the record already [was] replete with more than enough information on this topic for the Court to make a ruling," declared Defendant physically incompetent to stand trial, and removed the trial from the Court's calendar. *Id.* at *1, 6.

The Sixth Circuit vacated this Court's finding of incompetence and remanded for this Court to conduct a competency hearing. *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007). Though the Sixth Circuit found there was "no question that the district court found reasonable cause to believe that [Defendant] was incompetent," *id.*, it ruled this Court had to conduct a competency hearing to satisfy the requirements of 18 U.S.C. § 4241(a) before making the competency determination, *id.*

On remand, this Court held a competency hearing on September 26, 2007 (Court File No. 58). The Court ordered the parties to submit post-hearing briefs regarding their position on the

2

Court's resolution of the issues, the parties' recommended course of action, and the difficulties inherent in the recommendations (Court File No. 57). Based on the hearing and briefs, the Court found Defendant incompetent to proceed to trial or to waive his right to trial and enter a plea of guilty. Further, the Court ordered the Government to transfer Defendant to a suitable facility to attempt to render Defendant competent to stand trial, and to make regular reports of the progress made (Court File No. 71). Defendant was transferred to FMC Butner and underwent psychiatric evaluation and treatment from approximately March to September 2008. At the conclusion of Defendant's treatment, FMC Butner staff issued a written psychiatric evaluation (the "Report") which concluded Defendant was competent to stand trial and was not suffering from a mental disease or defect which prevented him from understanding the proceeding or assisting in his own defense.

This Court held the competency hearing required by § 4241(a) and the Sixth Circuit on October 10, 2008.[1] Present were Defendant and his two attorneys, Rita LaLumia and Anthony Martinez, as well as two interpreters for the defense and two interpreters for the Court. Assistant United States Attorney Chris Poole represented the Government. The Court's primary court reporter, Elizabeth Coffey, provided Computer Assisted Real Time (CART) reporting. The Court heard testimony from Dr. Adeirdre Stribling, a staff psychologist at FMC Butner, and from Darwin Ayscue, one of Defendant's interpreters.[2] The Court also placed on the record several of its

---

[1] This memorandum cites at length to the transcript from the October 10, 2008, hearing, which has been filed with the Court clerk's office (Court File No. 81). References to the transcript are abbreviated as Hr'g Tr. throughout.

[2] Mr. Ayscue is a sign language interpreter and nationally certified interpreter for the deaf, with over twenty-five years of experience in the deaf world. He is fluent in American Sign Language and has experience interpreting for defendants in criminal cases, including Defendant

3

observations about Defendant's conduct and apparent level of understanding of the proceedings. Based on the information gleaned from this hearing, the Court now makes its competency determination.

II.     **LEGAL STANDARD**

Federal criminal defendants may not "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To be afforded due process, a defendant must be competent at the time of trial. "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139–40 (1992) (Kennedy, J., concurring in the judgment). Even more succinctly, "the criminal trial of an incompetent defendant violates due process." *Medina v. California*, 505 U.S. 437, 453 (1992).

The test for a defendant's mental competency to stand trial was developed in *United States v. Dusky*, 362 U.S. 402, 402 (1960) (per curiam). "The test must be whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* The test has been refined to a four-prong inquiry. "[A] defendant must be able to (1) consult with the lawyer with a reasonable degree of rational understanding; (2) otherwise assist in the defense, (3) have a rational understanding of the criminal proceedings and (4) have a factual understanding of the proceedings." *United States v. Duhon*, 104 F. Supp. 2d 663, 670 (W.D.

---

here (Hr'g Tr. at 62, 65).

La. 2000) (incorporating standards from *Dusky*, 362 U.S. at 402, and *Drope v. Missouri*, 420 U.S. 162, 171–72 (1975)).

The competency standard under which Defendant was originally committed to FMC Butner is set forth in 18 U.S.C. § 4241(d), providing for treatment "for such a reasonable period of time . . . as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." This statute addresses a defendant's *mental* competency to stand trial, and the Court is unaware of a similar provision in the United States Code addressing a defendant's *physical* competency. The due process concerns enunciated in the foregoing cases, however, apply with equal force to this Defendant's ability to stand trial. A court's determination of a defendant's competency, after ordering a psychiatric evaluation and holding a hearing to determine competency, is reviewed for clear error. *United States v. Murphy*, 107 F.3d 1199, 1203 (6th Cir. 1997).

### III. DISCUSSION

The record from the October 10, 2008 competency hearing reflects the extensive difficulty Defendant had in understanding the proceedings. Defendant frequently interrupted the Court to say he could not understand, even when the Court was engaged in the relatively routine exercise of stating the case's procedural history, as evidenced by the following:[3]

---

[3]The Court also observed on the record the measures taken in the courtroom to attempt to make the environment understandable for Defendant (Hr'g Tr. at 5–6):

> THE COURT: The Court would also observe that as the Court has been talking, a woman in front of the bench, to my right, has been attempting to communicate with the defendant in some type of sign language. At the request of the parties, the Court's court reporter is utilizing realtime court reporting so that what is being said is displayed on a monitor in front

5

THE COURT: [T]he case was appealed to the United States Court of Appeals for the Sixth Circuit which indicated that Mr. Jones should be evaluated for mental competency—
THE DEFENDANT: I'm sorry. I don't understand the word "evaluate."
THE COURT: —as related to his physical deficiencies.
THE DEFENDANT: I'm sorry. I don't understand what you mean, "evaluate."
THE COURT: The Court then, after another hearing, in compliance with the Sixth Circuit's ruling, ordered that Mr. Jones be sent to a Federal Bureau of Prisons facility to rectify the physical—
THE DEFENDANT: I'm sorry. I don't understand that word. I don't understand the signs. I don't know what that means.
THE COURT: —deficiencies. The Bureau of Prisons has returned Mr. Jones to this district, and the Court has set aside time this morning—
THE DEFENDANT: To what? I'm sorry. I don't understand what that word means. What are you trying to say?
THE COURT: —for a hearing to determine whether the Court's earlier decision is still valid.
THE DEFENDANT: I don't understand what this means. Can you please help? I don't understand this word.

(Hr'g Tr. at 4–5). During the hearing, the interpreters were forced to interrupt to express how ineffective their efforts were:

MR. POOLE: If Your Honor can make his decision based on the written report as written, not any factual additions—not including any factual disputes or additions from the defense, then I don't know that we need to call Dr. Stribling. However, if Your Honor—
THE DEFENDANT: I'm sorry. I'm still not understanding what's going on.
THE INTERPRETER: Excuse me. This is the interpreter. It is impossible to interpret for this gentleman. He does not understand it, and we are not going to be able to interpret for him in this particular situation. He needs what's called a certified deaf interpreter to come into this court. He is not understanding us. We would not be qualified to continue in this

---

of the defendant. There are also two other interpreters in the courtroom—I'm sorry, there are actually three other interpreters in the courtroom. In addition to the one standing in front of the bench, who are also here to assist the defendant.
    Throughout the Court's remarks, the defendant has indicated several times that he cannot understand what is going on or what is being said or the meaning of certain words. The defendant does not speak in a very clear manner or voice, although much of what he says is understandable. The Court is also—
THE DEFENDANT: I can read some lips, but I can't understand what's being said. I don't understand the signs.
THE COURT: The Court has also spoken in an extremely slow manner, with long pauses between every two or three words.

6

> situation.
> MR. POOLE: I'm not asking that we continue, Judge. So that's fine with me.
> THE INTERPRETER: The defendant does not understand me. I've tried different ways. He does not understand American Sign Language as it is standardly used. He would need to have someone come in who is also deaf and certified as an interpreter to assist us so that he understands what is going on. He does not use standard American sign language.

(*id.* at 18–19).

Defendant's second stint at FMC Butner resulted in the Report completed by Dr. Stribling, about which she testified at the October 10 hearing (Court File No. 77). The Report concluded Defendant was competent to stand trial because he was not suffering from a mental disease or defect which prevented him from understanding the nature and consequences of the proceedings against him or assisting in his defense. Because the Report is sealed, the Court cannot extensively discuss its contents. However, the Court does find the Report addresses itself to Defendant's mental competency, while paying very little attention to the *physical* disabilities which are at the heart of Defendant's inability to understand the proceedings against him. Though the Report is internally cogent and well-presented, it is only minimally relevant to what the Court must determine here—whether the combination of Defendant's physical infirmities prevent or permit his proceeding to trial.

The Court has considered the possibility, raised by the Government, that Defendant is malingering and feigning his disorders (Hr'g Tr. at 9). The Court is unconvinced by this argument. The Court has now had the opportunity to observe Defendant in two competency hearings and a rearraignment hearing, and has taken notice of a prior proceeding before a magistrate judge (Court File No. 8). Each time, Defendant has exhibited the same behavior: a manifested inability to understand the proceedings, limited communicative ability, and ineffective consultation with his attorneys. Based on its observations of Defendant in the numerous times he has appeared before the

7

Court, the Court concludes Defendant is not feigning disabilities and is putting forth a reasonable amount of effort—unsuccessfully—to understand the proceedings.

The Court applies to this situation the four-part competency test set forth by the Supreme Court. First, Defendant could not consult with his counsel with any reasonable degree of understanding. Defendant's attorney explained the difficulty she had in communicating with her client while the proceedings took place:

> [MS. LaLUMIA]: While Mr. Poole was speaking about this issue, my client was trying to explain some things to me. I had to listen to Mr. Poole with one ear, try to listen to my client with my other ear, watch his mouth, try to communicate with the interpreter to find out what his issue was. He mentioned to me that during testing some of the questions he couldn't read or understand and he asked that those questions be read to him. He said about four people explained the questions to him.
> THE DEFENDANT: I don't understand all of this.

(Hr'g Tr. at 15). Second, Defendant is unable to otherwise assist in his defense; earlier efforts to engage in a mock rearraignment hearing with Defendant were unavailing because Defendant answered questions incorrectly even though he indicated he understood them. 2006 WL 389847 at *3. Finally, Defendant is able neither to rationally understand the criminal proceedings against him nor to have a factual understanding of them. Dr. Stribling testified Defendant

> would be limited in any setting where he would have to—if there was a lot going on at one time. But if placed in front of the person talking, certainly— He wouldn't be able to understand sounds coming from behind him, if he was in a crowd, and to know exactly where the sound came from, without being able to talk with the person face to face.

(Hr'g Tr. at 50). Relevantly for this case, the Court finds forcing Defendant to proceed to trial would plunge him into an environment which would necessarily include "a lot going on at one time."

An American courtroom is a highly verbal domain; a trial "is about as verbally demanding as anything you can imagine" (*id.* at 21). Witnesses give oral testimony, attorneys make frequent

8

objections and respond to opposing counsel's objections, the court issues oral rulings, and during all this, the defendant interacts with his attorneys to convey his impressions of and reactions to the events at trial. Though the Report may indicate Defendant's "environment is maximized when verbal domains are not emphasized" (*id.*), this is not an accurate description of the American trial process, which places great emphasis on verbal competency.

Numerous methods of enhancing Defendant's understanding have been attempted, all without success. Mr. Ayscue opined Defendant had a "very minimal[]" ability to understand American Sign Language ("ASL") (*id.* at 65) and that to teach Defendant ASL to a degree he could understand court proceedings would take "[y]ears, if at all" (*id.* at 73). At this time, neither "pure" ASL nor ASL with a combination of informal signing communicates effectively to Defendant, as Ayscue stated: "The interpreter Maggie is using American Sign Language. Dani is using American Sign Language and some pidgin. And we all do that. No slams about her. But just two different people with two different skills approaching it two different ways. And neither of them are being successful" (*id.* at 65). Lip-reading was also mentioned as a means for Defendant to understand the proceedings, but Ayscue testified lip-reading was not "an appropriate or useful way to communicate" in the courtroom setting because "[v]ery little is understood that way. Contextually people may understand 'How are you?' 'Fine,' 'Good to see you,' understand things that are mono, the vernacular. But as far as truly understanding what's going on in more complicated settings . . . whether that's a courtroom, is a very, very, very different animal" (*id.* at 68–69).

Though this Court's court reporter is highly skilled in the use of CART and provided it during the competency hearing, Ayscue testified it would be ineffective at Defendant's trial: "He's getting pieces of it. He's seeing certain words. But as far as understanding, an ongoing

9

understanding for a couple of sentences at the time, no" (*id.* at 66–67).  Ayscue also ruled out the use of a certified deaf interpreter: "[B]ecause Mr. Jones doesn't have those strong ASL skills, I don't think that would be, you know, a viable solution" (*id.* at 70).  Based on his viewing of Defendant during the October 10 hearing, as well as his professional background, Ayscue estimated Defendant understood only twenty to thirty percent of the hearing, and that he would not be able to understand parties who were speaking in a courtroom setting (*id.* at 69, 71).  In Ayscue's opinion, Defendant could not participate in and understand the proceedings in a trial in his case (*id.* at 63).

While Defendant was at FMC Butner, the staff used pantomime and pictorial illustrations to communicate certain concepts to him (*id.* at 21, 33).  Specifically, inmates within the competency restoration group in which Defendant participated were shown pictures from which they had to indicate courtroom personnel and different stages of the legal process (*id.* at 33–34).  While such a process is superficially appealing, the Court fears it does not adequately prepare Defendant for the complex, fast-paced nature of witness testimony and legal arguments which will develop during his (or any defendant's) trial.  The Court will not conduct a trial by charades with concepts like "proof beyond a reasonable doubt," or play Pictionary with "innocent until proven guilty."  Such an arrangement would not only inordinately delay the trial as every concept would have to be drawn out or play-acted for Defendant, but far more importantly, would provide no guarantees Defendant actually understands the dispositive legal concept being represented.  Such concepts are not mere formalities; a defendant's understanding of them is fundamental to the provision of due process, and the Court cannot countenance a trial which fails to guarantee the basic rights inherent in the American justice system.  The parties have been unable to develop any other solutions to remedy Defendant's physical and mental deficits in a way that makes him competent for trial, and the Court

10

is also bereft of further ideas.[4]

The Court has again attempted all of the ideas discussed in its earlier opinion, 2006 WL 389847, and had no greater success communicating with Defendant. After complying with the Sixth Circuit's order to hold a competency hearing, the Court has again arrived at the conclusion that Defendant cannot understand the nature of the proceedings against him and cannot communicate effectively with counsel, and hence a trial involving Defendant would ineluctably violate his Constitutional right to due process of law.

**IV.    CONCLUSION**

The foregoing reasons compel the Court to declare Defendant Isaac Jones physically incompetent to stand trial. When a defendant is incompetent, "due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him." *Medina*, 505 U.S. at 448 (citing *Dusky*, 362 U.S. at 402). Because the Court does not anticipate Defendant will become physically competent to stand trial, the Court will **REMOVE** the trial from its trial calendar permanently.

**SO ORDERED.**

---

[4]Dr. Stribling endorsed a recommendation by the Government's attorney that Defendant could be taught ASL and then bring an ASL interpreter into court (Hr'g Tr. at 36). But as Mr. Ayscue testified, the process of teaching Defendant proper ASL could take years, if it turned out successful at all (*id.* at 73). The Court finds it is no less of a due process violation to keep Defendant in custody indefinitely, on the chance he could master ASL, than to keep him in custody indefinitely awaiting his competence for trial.

11

**ENTER:**

    **/s/**
    **CURTIS L. COLLIER**
    **CHIEF UNITED STATES DISTRICT JUDGE**